IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. CR-19-144-D |
| EAGLE SOLDIER FRANK LEWIS, | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Before the Court is Defendant's Motion for *Jackson v. Denno*[1] Hearing and Motion to Suppress Defendant's Statement to Law Enforcement [Doc. No. 19]. Defendant Eagle Soldier Frank Lewis seeks to suppress evidence of statements he made to a special agent of the Bureau of Indian Affairs (BIA) during a four-hour interview conducted while Defendant was in custody of the Elk City Police Department. The government has filed a Response [Doc. No. 23] opposing the Motion.

On October 24, 2019, the Court conducted an evidentiary hearing at which Defendant appeared personally with appointed counsel, David Autry. The government appeared through Assistant United States Attorneys Jessica Cardenas and Nicholas Coffey. The Court received the testimony of BIA Special Agent Micah Ware, who conducted the interview, and three exhibits: Exhibit 1, a computer disk containing a video recording of the full interview: Exhibit 2, a computer disk containing an excerpt of the interview during

---

[1] *Jackson v. Denno*, 378 U.S. 368 (1964).

which Defendant allegedly gave an oral waiver of *Miranda* rights; and Exhibit 3, a copy of a written statement that Defendant allegedly made by marking "yes" or "no" answers to questions posed by Agent Ware. Upon consideration of the evidence, the case record, and the parties' arguments, the Court rules on the Motion as follows.

**Findings of Fact**

Agent Ware is a law enforcement officer employed by BIA in Oklahoma; he has been assigned since 2012 to investigate major crimes occurring in Indian country. Agent Ware has prior experience as a police officer and a police academy instructor, and has training and experience in interviewing suspects. On June 22, 2016, Agent Ware was contacted by a detective with the Elk City Police Department. The detective informed Agent Ware that Defendant had come to the police department on June 21, 2016, apparently intoxicated, and had made a statement about possible molestation of a minor niece, M.C. Defendant was arrested for public intoxication and detained. The BIA was contacted because the situs of the alleged conduct was a residence in Elk City, Oklahoma, located on Indian trust land.

Agent Ware traveled to Elk City in the afternoon of June 22, 2016, to interview Defendant while he was still in police custody. The interview began at approximately 2:50 p.m. in a small interview room furnished only with a table and three chairs. Defendant was not in handcuffs or restraints, but the door to the room was closed. Defendant was free to, and did, move around the room during the interview. Agent Ware was dressed in casual clothes. He carried a firearm, but it was not visible or disclosed to

Defendant. Agent Ware identified himself as a law enforcement officer and showed his credentials.

Agent Ware began the interview by introducing himself and asking Defendant some background questions, such as his name, age, address, and tribal affiliation. At the time, Defendant was 26 years old. He said that he had a high school education through tenth grade, and knew how to read and write. Agent Ware read a standard *Miranda* warning from a printed card, and confirmed that Defendant understood his rights. Agent Ware explained that Defendant by his wavier was giving permission to talk, and they were "just talking."

Agent Ware asked Defendant to explain why he came to the police department the night before. After first talking about allegations against a cousin, Defendant proceeded to discuss allegations of abuse that had been made against him regarding M.C. Defendant denied he had touched his niece in a sexual way. Agent Ware continued to ask Defendant repeatedly about the allegations, however, and pressured him to admit sexually touching M.C. Agent Ware said he had watched a videotape of Defendant's statement the night before about touching M.C., that he believed Defendant was feeling remorse, that Defendant's denial of touching M.C. in a sexual way was untrue, that lying to a federal agent was a criminal offense, that admitting his conduct would be helpful to M.C. and himself, and that he should take accountability for his actions.

Defendant steadfastly refused to admit he had sexually touched M.C. Defendant said he did not know if he had touched her (because he was intoxicated at the time) and became tearful and emotional. Defendant covered his face with his hands and lowered

his head or turned away when Agent Ware insisted that he talk about touching M.C. in a sexual manner. Defendant either responded in an equivocal or evasive manner, or made no verbal response. Agent Ware suggested it was difficult for Defendant to admit what he had done, and kept pressing Defendant to confess.

After approximately two hours, Agent Ware proposed that Defendant give written answers to his questions rather than answering aloud. On a piece of notebook paper, Agent Ware wrote five questions about Defendant's conduct toward M.C., with "yes" and "no" boxes after each one. Agent Ware read the questions to Defendant and then gave him the paper. Defendant took more than 40 minutes to mark his answers. Most of this time was spent in silence, but Agent Ware also repeatedly urged Defendant to answer the questions and take accountability for his actions. After Defendant completed the questionnaire, Agent Ware reviewed Defendant's answers with him and asked him to provide additional details. Defendant added few facts but assured Agent Ware it was an isolated incident. Agent Ware then spent approximately one and one-half hours questioning Defendant about other victims, sexual encounters, or sexual abuse, including childhood abuse of Defendant.

In the video recording of the interview, Defendant exhibited no hesitancy about talking to Agent Ware and answering questions generally. Defendant resisted only talking about sexual conduct toward M.C. He made no attempt to terminate the interview and did not request a lawyer. Agent Ware conducted the interview in a conversational tone; no accusatory or demanding tones, or raised voice was used. Agent Ware testified that Defendant did not appear to be under the influence of alcohol or impaired at the time

4

of the interview. The video recording supports this testimony. Defendant seemed to understand Agent Ware's questions and gave appropriate responses.

**Effective *Miranda* Waiver**

Defendant stands charged in the Indictment with committing abusive sexual contact within Indian country. Specifically, Count 1 alleges that Defendant knowingly engaged in and caused sexual contact with a minor female who had not attained the age of 12 years, in violation of 18 U.S.C. § 1153 and § 2244(a)(5). Defendant first asserts that Agent Ware obtained statements through a custodial interrogation conducted in violation of *Miranda v. Arizona*, 348 U.S. 437 (1966), because an incomplete *Miranda* warning was given and because Defendant did not knowingly and voluntarily waive his *Miranda* rights under the totality of the circumstances.

Defendant contends Agent Ware should have, but did not, inform Defendant that he could stop the interrogation at any time, even after it had begun. Defendant also contends Agent Ware made additional statements that attempted to minimize the consequences of the waiver. Defendant argues that his waiver was ineffective because Agent Ware's assurance that "we're just talking" deprived him of a full understanding "of the importance of the rights he was being asked to relinquish and the consequences of his decision to give up those rights." *See* Def.'s Mot. Suppress [Doc. No. 19] at 4.

Where a custodial statement is obtained without an attorney present, "a heavy burden rests on the government to demonstrate that the defendant knowingly and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel." *See Miranda*, 384 U.S. at 475; *see also N.C. v. Butler*, 441 U.S. 369,

373 (1979). However, the government's "burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of [the] *Miranda* doctrine . . . [is] only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). As stated by the Tenth Circuit:

> To establish a voluntary waiver of Fifth Amendment rights, the government must show (1) that the waiver was the product of free and deliberate choice rather than intimidation, coercion, or deception; and (2) that the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving. Only if the totality of the circumstances surrounding the interrogation shows both an uncoerced choice and the requisite level of comprehension can a waiver be effective.

*United States v. Toro-Pelaez*, 107 F.3d 819, 825 (10th Cir. 1997) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)); *see United States v. Morris*, 287 F.3d 985, 989 (10th Cir. 2002). The Tenth Circuit has also identified appropriate circumstances for consideration:

> In determining whether rights were voluntarily waived, we consider: the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect.

*United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010).

In this case, Defendant was read a printed statement of *Miranda* rights. The omitted information about which Defendant complains – that he could stop the interview if he changed his mind – is not legally required, and the Court finds that it was not necessary under the circumstances. *See United States v. DiGiacomo*, 579 F.2d 1211, 1214 (10th Cir. 1978) ("no express requirement to warn suspects of the right to terminate questioning" but a failure to warn may affect the voluntariness of statements made). There is no evidence to suggest that Defendant's capacity to determine for himself whether to speak

6

with Agent Ware and to answer his questions was impaired in any way. Nothing about the circumstances of the custodial interrogation suggests that Defendant was coerced to waive his rights. Defendant complains that Agent Ware made comments after reading the *Miranda* warning that downplayed the importance of the right to remain silent and the consequences of choosing to speak, and so impaired the efficacy of the warning. The Court finds, however, that Agent Ware's comments did not prevent Defendant from making an independent choice or understanding his rights.

Under the totality of the circumstances, the Court finds Defendant made a voluntary decision to speak to Agent Ware with full awareness and understanding of the information required by *Miranda* and the consequences of relinquishing his constitutional rights. Therefore, the Court finds Defendant's *Miranda* waiver was valid and effective.

**Voluntariness of Incriminating Statements**

Defendant's Motion also challenges whether his incriminating statements were voluntarily made. Upon timely request, a defendant is entitled to an evidentiary hearing outside the presence of a jury to determine the voluntariness of a confession. *See Jackson v. Denno*, 378 U.S. 368, 376-77 (1964). The burden is on the government to prove by a preponderance of the evidence that a defendant's statements were voluntary. *See United States v. Williams*, 576 F.3d 1149, 1162 (10th Cir. 2009); *United States v. Pettigrew*, 468 F.3d 626, 633 (10th Cir. 2006).

"The voluntariness of a statement depends upon an assessment of 'the totality of all the surrounding circumstances' including 'both the characteristics of the accused and the details of the interrogation.'" *United States v. Cash*, 733 F.3d 1264, 1280 (10th Cir. 2013)

7

(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); internal quotation omitted). "In applying a totality of circumstances analysis, [the Tenth Circuit has] considered (1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subject to any physical punishment." *Cash*, 733 F.3d at 1280-81 (internal quotation omitted); *see Schneckloth*, 412 U.S. at 226; *see also Yarborough v. Alvarado,* 541 U.S. 652, 668 (2004); *Williams*, 576 F.3d at 1162. Some coercive police activity is a necessary predicate to a finding that a confession was not voluntary. *See Connelly*, 479 U.S. at 167; *Cash*, 733 F.3d at 1281; *Smith v. Mullin*, 379 F.3d 919, 934 (2004). However, the critical question is whether a defendant's statement was freely made or whether his "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth*, 412 U.S. at 225; *see United States v. Rodebaugh*, 798 F.3d 1281, 1290 (10th Cir. 2015); *United States v. Lopez,* 437 F.3d 1059, 1063 (10th Cir. 2006).

Having heard Agent Ware's testimony, and after reviewing the entire video recording of his interview of Defendant, the Court finds that Defendant's oral and written statements about the alleged offense were voluntary. Defendant was advised of his constitutional rights and agreed to answer Agent Ware's questions. Although Defendant was interrogated in an interview room at a police department, he was free to (and did) move around the room. Agent Ware did not conduct the interrogation in a threatening or physically coercive manner. There is no evidence to suggest Defendant's intoxication the

previous night or any impairment affected his ability to determine whether to speak with Agent Ware and whether to discuss the alleged offense conduct.[2]

The video recording shows that Defendant was reluctant to discuss sexual conduct. However, Defendant was not a young age or uneducated, and at no point did he refuse to answer Agent Ware's questions. Defendant readily gave a narrative account of an encounter with M.C. in which he moved her from the room where she was sleeping to another bedroom in the house. Defendant's reluctance to answer Agent Ware's questions about the encounter was primarily manifested by long silences and evasive body language, like lowering his head and avoiding eye contact. Defendant also had emotional responses to pointed questions about whether he had touched M.C. in a sexual manner. During most periods of silence, however, Agent Ware did not speak but merely sat and waited.

A number of times during the interview, Agent Ware verbally pressured Defendant to confess that he had engaged in sexual conduct toward M.C. For more than two hours, Agent Ware repeatedly asked Defendant the same questions, accused him of deception, suggested he had already confessed, and urged him to take responsibility for his conduct and help M.C. The Court has some concern about the interrogation technique and Defendant's susceptibility to it. The Court finds, however, that neither the length of the interview that preceded Defendant's incriminating written statements (approximately two and three-quarter hours) nor the degree of pressure asserted was sufficient – viewed

---

[2] Agent Ware admitted during cross-examination, and the video recording confirms, that Defendant complained of chest pains toward the end of the interview. However, no evidence has been presented to support a finding that Defendant was affected by any illness during the interview.

9

separately or taken together – to support a conclusion that Defendant's statements were coerced.

Under the totality of the circumstances shown by the evidence, the Court finds the incriminating statements made by Defendant during the June 22, 2016 interview were freely and voluntarily made.

## Conclusion

For these reasons, the Court finds that Defendant's waiver of *Miranda* rights was voluntary and effective and that Defendant's incriminating statements were voluntary.

IT IS THEREFORE ORDERED that Defendant's Motion for *Jackson v. Denno* Hearing is GRANTED to the extent that a pretrial hearing was held, but his Motion to Suppress Defendant's Statement to Law Enforcement [Doc. No. 19] is DENIED.

IT IS SO ORDERED this 26th day of December, 2019.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge